# Exhibit "A"

# SECURITY UNION TITLE

**RECORDING REQUESTED BY:**
NationsBest Mortgage Escrow Division

**AND WHEN RECORDED MAIL TO:**
**AND MAIL TAX STATEMENT TO:**

4427 Tyrolite St
Riverside, CA 92509

Order No. 3613088-W02
Escrow No. 030089RF
Parcel No. 171-150-004-7

**DOC # 2003-477995**
06/27/2003 08:00A Fee:30.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC |
|---|---|---|------|------|-----|------|-------|-----|------|
| | | | | | | | | | |
| A | R | L | | | COPY | LONG | REFUND | NCHG | EXAM |

TRA 088

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS $ and CITY $ 0

_____ computed on full value of property conveyed, or
_____ computed on full value less liens or encumbrances remaining at the time of sale.
__X__ unincorporated area: _____ Riverside, and

T
SP

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Efrain Zepeda, A Single Man And Angel Robles, A Single Man, Both as Joint Tenants.**

hereby GRANTS to **Efrain Zepeda, a single man**

the following described real property in the County of **Riverside**, State of California:

**The Land referred to herein is situated in the State of California, county of Riverside, described as follows:**

**See Legal Description Attached hereto and made a part hereof as Exhibit "A".**

Date   May 28, 2003

_Efrain Zepeda_

_Angel Robles_

"THIS IS A BONAFIDE GIFT AND
THE GRANTOR RECEIVED NOTHING
IN RETURN, R & T 11911."

STATE OF CALIFORNIA   }
                      } S.S.
COUNTY OF Riverside   }

On, May 28, 2003 _____ before me, Veronica Gutierrez _____, a Notary Public in and for said County and State, personally appeared Efrain Zepeda, Angel Robles ~~personally known to me (or proved~~ to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

VERONICA GUTIERREZ
Comm. # 1371414
NOTARY PUBLIC - CALIFORNIA
Riverside County
My Comm. Expires Aug. 23, 2006

# DESCRIPTION

Order No. 036130388

ALL THAT PORTION OF THE NORTHERLY RECTANGULAR HALF OF LOT 14 IN SECTION 12, TOWNSHIP 2 SOUTH, RANGE 6 WEST, SAN BERNARDINO MERIDIAN, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP OF SUBDIVISION OF A PORTION OF JURUPA RANCHO RECORDED IN BOOK 9 PAGE 26 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERLY CORNER OF SAID LOT 14; THENCE SOUTHERLY ALONG THE EASTERLY LINE OF SAID LOT 14, A DISTANCE OF 264 FEET TO THE POINT OF BEGINNING OF THE PARCEL TO BE DESCRIBED; THENCE CONTINUING SOUTHERLY ALONG THE EASTERLY LINE OF SAID LOT 14, A DISTANCE OF 131.63 FEET; THENCE WESTERLY AND PARALLEL WITH THE NORTHERLY LINE OF SAID LOT 14; A DISTANCE OF 630.93 FEET, MORE OR LESS TO THE WESTERLY LINE THEREOF; THENCE NORTHERLY ALONG THE WESTERLY LINE OF SAID LOT 14, A DISTANCE OF 131.63 FEET; THENCE EASTERLY AND PARALLEL WITH THE NORTHERLY LINE OF SAID LOT 14, A DISTANCE OF 630.93 FEET, MORE OR LESS TO THE POINT OF BEGINNING



2003-477995
06/27/2003 08:00A
2 of 2

Exhibit "B"



**Bank of America**

**Home Loans**

Customer Service
PO Box 5170
Simi Valley, CA 93062-5170

Fecha del Estado de Cuenta **06/29/2010**
**Número de Cuenta 036586582**
Dirección de la Propiedad
4427 Tyrolite Street



0 2 1 4 9 3 0 01 AV 0.332 **AUTO T1 0 6701 92509-3358
MSR CZ AG 0401----1--2--- C0000068 IN 1 P15360
EFRAIN ZEPEDA
4427 Tyrolite St
Riverside CA 92509-3358

## AVISO IMPORTANTE

Si usted y BAC Home Loans Servicing, LP han pactado un acuerdo para dirigir sus pagos mensuales, por favor haga sus pagos conforme a este mismo acuerdo.

Si ha calificado para una reducción de intereses basado en que en estos momentos se encuentra activo en el servicio militar, los estados de cuenta subsecuentes pueden no reflejar esta reducción del importe (pago). Por favor refiérase al aviso enviado a usted previamente indicando la reducción del importe (pago).

| RESUMEN DEL PRÉSTAMO HIPOTECARIO | Informe general del préstamo hipotecario a partir de 06/29/2010 | | Cantidad por vencer el 07/01/2010 a partir de 06/29/2010 | |
|---|---|---|---|---|
| | Saldo Principal | $141,785.04 | Vencimiento del pago del préstamo hipotecario 07/01/2010 | $1,144.67 |
| | Saldo de la Cuenta en Custodia | -$803.57 | Cantidad del pago atrasado | 6,875.60 |
| | Recargo de Pago Tardío si el pago se recibe después del 07/16/2010 | $36.23 | (Lea la siguiente página para los detalles de su cuenta) | |

Monitoreamos y grabamos llamadas al azar para asegurar buena calidad. Es posible que se le cobre un cargo (de hasta $40.00) por cada pago que sea devuelto o rechazado por su institución financiera, sujeto a la ley que se aplica.

BAC Home Loans Servicing, LP tiene el deer de informarle por ley que este comunicado proviene de un recaudador de deudas.

## INSTRUCCIONES DE PAGO

1. Por favor
   - no envíe dinero en efectivo
   - no sujete el cheque al cupón de pago
   - no incluya correspondencia
   - incluya el cupón con el pago

2. Escriba el número de cuenta en el cheque o giro postal.

3. Escriba cualquier cantidad adicional que vaya incluir.

4. Haga el cheque pagadero a
   **BAC Home Loans Servicing, LP**
   Attn: Remittance Processing
   PO Box 515503
   Los Angeles, CA 90051-6803

Número de Cuenta **036586582**    **(3)**
Efrain Zepeda
4427 Tyrolite Street
Riverside, CA 92509

Por favor actualice la información del e-mail ubicado en el dorso de este cupón.

VEA AL REVERSO PARA LAS INSTRUCCIONES DE PAGO    6701

BAC Home Loans Servicing, LP
PO BOX 515503
LOS ANGELES, CA 90051-6803

| | |
|---|---|
| Principal Adicional | |
| Cuenta en Custodia Adicional | |
| Total del Cheque | |

0365865823000001144670000118090

⑆586990058⑆036586582⑈

DOC # 2003-477996

06/27/2003 08:00A Fee:36.00
Page 1 of 10
Recorded in Official Records
County of Riverside
Gary L. Orso
Assessor, County Clerk & Recorder

RECORDING REQUESTED BY:
GUARANTY
RESIDENTIAL LENDING, INC.

AND WHEN RECORDED MAIL TO:
Banking & Shipping Dept.
P.O. Box 2198
Austin, TX 78768-2198

| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC |
|---|---|---|------|------|----|----|----|-----|------|
| | I | | 10 | | | I | | | |
| A | R | L | | | | COPY | LONG | REFUND | NCHG | EXAM |

AP# 171 150 004 7
State of California

# DEED OF TRUST

FHA Case No.
0483940711703

MIN     100012900016744612
        1674461

T
SP

THIS DEED OF TRUST ("Security Instrument") is made on **June 19, 2003**
The Trustor is
**EFRAIN ZEPEDA A SINGLE MAN**

, whose address is
**4427 TYROLITE STREET, RIVERSIDE (AREA) , CALIFORNIA 92509**
("Borrower"). The trustee is **GUARANTY RESIDENTIAL**
**LENDING, INC.**

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**Guaranty Residential Lending, Inc.**                                ,
("Lender") is organized and existing under the laws of **NEVADA**                        , and
has an address of **1300 South Mopac Expressway, Austin, TX 78746**
                                    . Borrower owes Lender the principal sum of
**ONE HUNDRED FIFTY SEVEN THOUSAND THREE HUNDRED FIFTY ONE & 00/100**
                                    Dollars (U.S. $     157,351.00                ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on     **July 1,**
**2033**          . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance

FHA California Deed of Trust with MERS - 4/96
VMP-4N(CA) (0207)              Amended 2/98
Page 1 of 8   UO6CAAC        Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

1674461

of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in **Riverside**                                                                                 County, California:

**All that tract or parcel of land as shown on Schedule "A" attached hereto which is incorporated herein and made a part hereof.**

which has the address of    **4427 TYROLITE STREET**                                                                [Street]
**RIVERSIDE (AREA)**                          [City], California    **92509**          [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

Initials: _____

VMP-4N(CA) (0207)   UO6CAAD                          Page 2 of 8

2003-477996
06/27/2003 08:00A
2 of 18

1674461

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a

Initials: 



2003-477996
06/27/2003 68:06A
3 of 18

1674461

principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

Initials: 

 **4N(CA)** (0207)    **U06CAAF**        Page 4 of 8



1674461

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Initials: 



2003-477996
06/27/2003 98 00A
5 of 19

1674461

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Initials: 

2003-477996
06/27/2003 08:00A
6 of 10

1674461

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**21. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**22. Beneficiary Statement.** Lender may collect a fee, not to exceed the maximum amount permitted by law for furnishing Beneficiary statement as provided by Section 2943 of the Civil Code of California.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

Initials: _Z 2_



2003-477996
06/27/2003 08:00A
7 of 10

1674461

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                    EFRAIN ZEPEDA                 -Borrower

_____    _____ (Seal)
                                                                 -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                                -Borrower

State of California
County of Riverside                                    } ss.

On June 21, 2003              before me,  Veronica Gutierrez
                                                    personally appeared

Efrain Zepeda _____

known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.
    (This area for official notarial seal)



_____ (Seal)

VERONICA GUTIERREZ
Comm. # 1371414
NOTARY PUBLIC CALIFORNIA
Riverside County
My Comm. Expires Aug. 23, 2006

VMP-4N(CA) (0207)    UO6CAAJ                    Page 8 of 8

2003-477996
06/27/2003 08:00A
8 of 19

# SCHEDULE   A

3. The land referred to in this report is situated in the State of California, County of RIVERSIDE and is described as follows:

ALL THAT PORTION OF THE NORTHERLY RECTANGULAR HALF OF LOT 14 IN SECTION 12, TOWNSHIP 2 SOUTH, RANGE 6 WEST, SAN BERNARDINO MERIDIAN, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP OF SUBDIVISION OF A PORTION OF JURUPA RANCHO RECORDED IN BOOK 9 PAGE 26 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERLY CORNER OF SAID LOT 14; THENCE SOUTHERLY ALONG THE EASTERLY LINE OF SAID LOT 14, A DISTANCE OF 264 FEET TO THE POINT OF BEGINNING OF THE PARCEL TO BE DESCRIBED; THENCE CONTINUING SOUTHERLY ALONG THE EASTERLY LINE OF SAID LOT 14, A DISTANCE OF 131.63 FEET; THENCE WESTERLY AND PARALLEL WITH THE NORTHERLY LINE OF SAID LOT 14; A DISTANCE OF 630.93 FEET, MORE OR LESS TO THE WESTERLY LINE THEREOF; THENCE NORTHERLY ALONG THE WESTERLY LINE OF SAID LOT 14, A DISTANCE OF 131.63 FEET; THENCE EASTERLY AND PARALLEL WITH THE NORTHERLY LINE OF SAID LOT 14, A DISTANCE OF 630.93 FEET, MORE OR LESS TO THE POINT OF BEGINNING

REA -10/31/97bk



# DESCRIPTION

Order No. 036130388

ALL THAT PORTION OF THE NORTHERLY RECTANGULAR HALF OF LOT 14 IN SECTION 12, TOWNSHIP 2
SOUTH, RANGE 6 WEST, SAN BERNARDINO MERIDIAN, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA,
AS SHOWN BY MAP OF SUBDIVISION OF A PORTION OF JURUPA RANCHO RECORDED IN BOOK 9 PAGE 26
OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY, DESCRIBED AS
FOLLOWS:

BEGINNING AT THE NORTHEASTERLY CORNER OF SAID LOT 14; THENCE SOUTHERLY ALONG THE EASTERLY
LINE OF SAID LOT 14, A DISTANCE OF 264 FEET TO THE POINT OF BEGINNING OF THE PARCEL TO BE
DESCRIBED; THENCE CONTINUING SOUTHERLY ALONG THE EASTERLY LINE OF SAID LOT 14, A DISTANCE
OF 131.63 FEET; THENCE WESTERLY AND PARALLEL WITH THE NORTHERLY LINE OF SAID LOT 14; A
DISTANCE OF 630.93 FEET, MORE OR LESS TO THE WESTERLY LINE THEREOF; THENCE NORTHERLY
ALONG THE WESTERLY LINE OF SAID LOT 14, A DISTANCE OF 131.63 FEET; THENCE EASTERLY AND
PARALLEL WITH THE NORTHERLY LINE OF SAID LOT 14, A DISTANCE OF 630.93 FEET, MORE OR LESS
TO THE POINT OF BEGINNING



2003-477996
06/27/2003 08:00A
19 of 19

# Exhibit "C"



Member HSBC ◇ Group

Statement for
**EFRAIN ZEPEDA**

Account Number
**0016118812**

| Statement Date | July 09, 2010 |
|---|---|
| Payment Due | $3,227.56 |
| Payment Due Date | July 26, 2010 |

HFC Branch
800-365-0175
P.O. BOX 3425
BUFFALO, NY 14240

Customer Service
800-365-0175

Website
WWW.HFC.COM

To avoid late charges we must receive your payment by 08/05/10 during business hours.

## Payment Detail

**Your payment due 07/26/10**

| | |
|---|---|
| Principal & Interest | 514.01 |
| Standard Payment | 514.01 |
| Past Due Amount | 2,570.05 |
| Unpaid Late Charges | 128.50 |
| Other Fees & Adv | 15.00 |
| Payment Due | $3,227.56 |

## Account Summary

**Summary as of 07/09/10**

**Balances Owed**

Principal Balance[1]        46,268.88

1) Your Principal Balance is not a payoff amount. To receive information on paying off your loan, please call us at 888-395-6000 or visit www.hfc.com.

## Recent Activity    Account activity since last statement

| Date | Description | Total Amount | Principal | Interest | Total Escrow | Advance | Insurance Premium | Late Charge | Other Fees | Unapplied Funds |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

STMT255G (02/10)

Page 1 of 2

## Payment Coupon

Make checks payable to :   HFC
Always write your account number on your check.

Enclose this coupon with your payment.

Please check here for change of address & complete other side

| Account Number: | 0016118812 |
|---|---|
| Payment Due Date: | July 26, 2010 |
| Payment Due: | $3,227.56 |

Amount Enclosed:  $

EFRAIN ZEPEDA
4427 TYROLITE
RIVERSIDE, CA 92509-3358

HFC
P.O. Box 5233
Carol Stream, IL  60197-5233

840  0016118812  0325326  0322756

DOC # 2006-0938172
12/21/2006 08:00A Fee:134.00
Page 1 of 9
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

Recording Requested By

WHEN RECORDED MAIL TO

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **S** | **R** | **U** | **PAGE** | **SIZE** | **DA** | **MISC** | **LONG** | **RFD** | **COPY** |
| | | | | | | | | | |
| **M** | **A** | **L** | **465** | **426** | **PCOR** | **NCOR** | **SMF** | **NCHG** | **EXAM** |

NAME: Records Processing Services
STREET ADDRESS: 577 Lamont Road
CITY & STATE: Elmhurst, IL 60126

EXAM: 006

214230

# DEED OF TRUST

C 008

(Page 1 of 8)

33

☐ If this box is checked, this Deed of Trust secures future advances.

THIS DEED OF TRUST is made this 20TH day of DECEMBER , 20 06 , among the Trustor, EFRAIN ZEPEDA, _____ whose

address is 4427 TYROLITE, RIVERSIDE, CA 92509

(herein "Borrower"), STEWART TITLE GUARANTY

(herein "Trustee") and the Beneficiary, HOUSEHOLD FINANCE CORPORATION OF CALIFORNIA ,

a corporation organized and existing under the laws of DELAWARE whose address is

4161 TWEEDY BLVD, SUITE D, SOUTHGATE, CA 90280

(herein "Lender").

The following paragraph preceded by a checked box is applicable.

☒ WHEREAS, Borrower is indebted to Lender in the principal sum of $ 50,793.29 , evidenced by Borrower's Loan Agreement dated DECEMBER 20, 2006 and any extensions or renewals thereof (including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for monthly installments of principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable, with the balance of the indebtedness, if not sooner paid, due and payable on DECEMBER 20, 2023 ;

☐ WHEREAS, Borrower is indebted to Lender in the principal sum of $ _____ , or so much thereof as may be advanced pursuant to Borrower's Revolving Loan Agreement dated _____ and extentions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a credit limit stated in the principal sum above and an initial advance of $ _____ ;

TO SECURE to Lender the repayment of the indebtedness, including future advances, evidenced by the Note, with interest thereon at the applicable contract rate (including any adjustments to the amount of payment or the contract rate if that rate is variable) and other charges; the payment of all other sums, with interest thereon, advance in accordance herewith to protect the security of this Deed of Trust; and the performance of the convenants and agreements of Borrower herein contained, Borrower, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust with power of sale, the following described property located in the County of RIVERSIDE State of California:

CONTINUED ON EXHIBIT A-LEGAL DESCRIPTION

which has the address of 4427 TYROLITE, _____ RIVERSIDE
                          (Street)                              (City)

California 92509 _____ (herein "Property Address");
          (Zip Code)

*Z356C3218N95D0T9000CA0080310**ZEPEDA        *        ORIGINAL

(Page 2 of 8)

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property;"

TO SECURE to Lender the repayment of (1) the indebtedness evidenced by the Note, with interest thereon, including any increases if the contract rate is variable; (2) all present and future advances under the Revolving Loan Agreement; (3) the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and (4) the performance of the covenants and agreements of Borrower herein contained; and (5) the payment of such further sums as the then record owner of the Property hereafter may borrower from Lender, when evidenced by another note (or notes) reciting it is so secured.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest (including any variations in interest resulting from changes in the contract rate that may be specified in the Note) on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 2. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 12. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the loan current. Lender may accept any payment or partial payment insufficient to bring the loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each periodic payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Funds for Escrow Items. Borrower shall pay to Lender on the day periodic payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any. These items are called "Escrow Items." At origination or at any time during the term of the loan, Lender may require that community association dues, fees, and assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in

*Z356C3218N95DOT9000CA0080320**ZEPEDA          *          ORIGINAL          CA008032

this Security Instrument, as the phrase "covenant and agreement" is used in Section 7. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 7 and pay such amount and Borrower shall then be obligated under Section 7 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 12 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 2.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 35000), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this security instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the loan does not qualify as a "federally related mortgage loan" under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

3. Application of Payments or Proceeds. Except as otherwise described in this Section 3 or as may be required by the Note and/or applicable law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the note; (c) amounts due under Section 2. Such payments shall be applied to each periodic payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent periodic payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one periodic payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the periodic payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more periodic payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or miscellaneous proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the periodic payments.

4. Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require and in

such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by the Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Where the original principal amount of the Note then in effect is $10,000 or more, any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 15 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

(Page 5 of 8)

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The applicable law contained in the Note shall control. Where no applicable law is contained therein, the state and local laws of the jurisdiction in which the Property is located shall be applicable to this Deed of Trust, except where such laws conflict with Federal law in which case Federal law shall apply. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

15. **Transfer of the Property; Assumption.** If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) The creation of a lien or encumbrance subordinate to this Deed of Trust which does not relate to a transfer of rights of occupancy in the property: Provided, that such lien or encumbrance is not created pursuant to a contract for deed; (b) The creation of a purchase-money security interest for household appliances; (c) A transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety; (d) the granting of a leasehold interest which has a term of three years or less and which does not contain an option to purchase; (e) A transfer, in which the transferee is a person who occupies or will occupy the property, which is: (A) a transfer to a relative resulting from the death of the Borrower; (B) a transfer where the spouse or child(ren) becomes an owner of the property; or (C) a transfer resulting from a decree of dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement by which the spouse becomes an owner of the property; or (f) A transfer into an inter vivos trust in which the Borrower is a, and remains, the beneficiary and occupant of the property, unless, as a condition precedent to such transfer, the Borrower refuses to provide the Lender with reasonable means acceptable to the Lender by which the Lender will be assured of timely notice of any subsequent transfer of the beneficial interest or change in occupancy; Lender may, at Lender's option, declare all sums secured by this Deed of Trust to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is sold or transferred reach an agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Deed of Trust shall be at such rate as Lender shall request. Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by Paragraph 16 hereof.

16. **Acceleration; Remedies.** Except as provided in paragraph 15 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in the paragraph 16 including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on

Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statement made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

17. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time within three months of the recording of default under this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 16 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

18. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 16 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 16 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

19. **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall, upon payment of its fees, reconvey the Property without warranty to the person or persons legally entitled thereto.

20. **Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

21. **Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924b of the Civil Code of California.

22. **Statement of Obligation.** Lender may collect a fee not to exceed $60 for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

23. **Arbitration Rider to Note.** The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Mortgage.

## REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

(Page 7 of 8)

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance of any sale or other foreclosure action.

_EFRAIN ZEPEDA_       - Borrower

      - Borrower

State of   ) California
County of   _LOS ANGELES_

On _12_/_20_/_2006_ before me, ( _MINERVA RODRIGUEZ_ ), a Notary Public, personally appeared _EFRAIN ZEPEDA_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose names(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal
Signature _____ (Seal)

> MINERVA RODRIGUEZ
> Commission # 1556762
> Notary Public - California
> Los Angeles County
> My Comm. Expires Apr 2, 2009

State of   ) California
County of _____ )

On_____ before me, (_____ ), a Notary Public, personally appeared _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose names(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal
Signature:_____ (Seal)

08-23-06 DOT

*Z356C3218N95D0T9000CA008037O**ZEPEDA*    *    ORIGINAL

CA008037

**(Page 8 of 8)**

Title Order No. _____    Escrow Loan No. _____

<div style="border:1px solid">

**Deed of Trust**
WITH POWER OF SALE
(LONG FORM)

**Housekey Financial Corporation**

AS TRUSTEE

D006-279488

</div>

**DO NOT RECORD**
FOR RECONVEYANCE OR FORECLOSURE SEND TO THE NEAREST
OFFICE OF HOUSEKEY FINANCIAL CORPORATION

**REQUEST FOR FULL RECONVEYANCE**

To be used only when note has been paid.

Dated _____

To HOUSEKEY FINANCIAL CORPORATION, Trustee:

The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

MAIL RECONVEYANCE TO:

_____

_____    (By) _____

_____    (By) _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures.
Both must be delivered to the Trustee for cancellation before reconveyance will be made.

08-23-06-06 DOT

CA008038

*Z356C3218N95DOT9000CA008038O**ZEPEDA          *          ORIGINAL

EXHIBIT A (PAGE 1)

THE FOLLOWING DESCRIBED REAL PROPERTY IN THE COUNTY OF
RIVERSIDE, STATE OF CALIFORNIA:

THE LAND REFERRED TO HEREIN IS SITUATED IN THE STATE OF
CALIFORNIA, COUNTY OF RIVERSIDE, DESCRIBED AS FOLLOWS:

ALL THAT PORTION OF THE NORTHERLY RECTANGULAR HALF OF LOT 14
IN SECTION 12, TOWNSHIP 2 SOUTH, RANGE 6 WEST, SAN
BERNARDINO MERIDIAN, COUNTY OF RIVERSIDE, STATE OF
CALIFORNIA, AS SHOWN BY MAP OF SUBDIVISION OF A PORTION OF
JURUPA RANCHO RECORDED IN BOOK 9 PAGE 26 OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY,
DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERLY CORNER OF SAID LOT 14; THENCE
SOUTHERLY ALONG THE EASTERLY LINE OF SAID LOT 14, A DISTANCE
OF 264 FEET TO THE POINT OF BEGINNING OF THE PARCEL TO BE
DESCRIBED; THENCE CONTINUING SOUTHERLY ALONG THE EASTERLY
LINE OF SAID LOT 14, A DISTANCE OF 131.63 FEET; THENCE
WESTERLY AND PARALLEL WITH THE NORTHERLY LINE OF SAID LOT
14; A DISTANCE OF 630.93 FEET, MORE OR LESS TO THE WESTERLY
LINE THEREOF; THENCE NORTHERLY ALONG THE WESTERLY LINE OF
SAID LOT 14, A DISTANCE OP 131.63 FEET; THENCE EASTERLY AND
PARALLEL WITH THE NORTHERLY LINE OF SAID LOT 14, A DISTANCE
OF 630.93 FEET, MORE OR LESS TO THE POINT OF BEGINNING.  TAX
MAP OR PARCEL ID NO.: 171-150-004-7